UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DUSTIN MICHAEL TROWBRIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00014-JMS-MJD |
| | ) | |
| INDIANA DEPARTMENT OF CORRECTIONS, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Dustin Trowbridge, an inmate at the Indiana Department of Correction ("IDOC"), claims the defendants confiscated a semi-nude image of his fiancée in violation of the First Amendment. He further argues that IDOC's correspondence policy preventing inmates from receiving nude or sexually explicit images violates the First Amendment. The defendants argue that the policy is reasonably related to IDOC's legitimate penological concerns in protecting female employees from unwanted sexual harassment and maintaining safety and security in its facilities. In response, Mr. Trowbridge argues the defendants have not presented evidence that the correspondence policy serves these interests. For the reasons explained below, the motion for summary judgment is **GRANTED** and the action is **DISMISSED WITH PREJUDICE**.

**I.**
**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not

establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II.
## BACKGROUND

### A.  JPay Email Services

JPay is a private company that partners with federal, state, and county correctional facilities to provide mail services for inmates. At all times relevant to this lawsuit, IDOC contracted with

JPay to provide email services to inmates at Wabash Valley Correctional Facility ("WVCF"). Dkt. 55-2, p. 12. Friends and family of inmates living in IDOC facilities can use JPay to send money, emails, and photographs, which inmates can print for a small fee by making a print request at a JPay kiosk. *Id.*

### B.  IDOC Correspondence Policy

Inmate correspondence is governed by IDOC Policy 02-01-103 ("the correspondence policy"). Dkt. 55-7, pp. 1-2. The **correspondence** policy states, "An offender may acquire or possess printed matter on any subject. *Id.* at 20. However, printed matter shall be inspected and may be excluded if the matter is contraband or prohibited property." *Id.* The correspondence policy explicitly prohibits "[a]ny printed matter that features nudity or any other material depicting nudity," including "personal photographs of nude persons, as well as photographs of nude persons taken from books, magazines, electronic media, or other sources that are sent to offenders in or with letters or other mailings."  *Id.* at 20-22.

The correspondence policy makes an exception for materials depicting nudity "for educational, medical, or anthropological purposes[.]" *Id.* at 22. It explicitly allows inmates to possess publications from *National Geographic*, *Our Bodies, Our Selves*, "Sports magazine swimsuit issues," and lingerie catalogues because these publications "may occasionally, but do not regularly, depict nudity." *Id.* at 21; dkt. 55-3, para. 4. This exception is based on the current commercial practices of these publications and is subject to change. Dkt. 55-7, p. 21.

The correspondence policy defines nudity as "a pictorial depiction where genitalia or female breasts are exposed." *Id.* at 21. Whether a photograph depicts "nudity," and whether that nudity is depicted for an educational, medical, or anthropological purpose, "shall be reviewed on a case by case basis[.]" *Id.* at 22.

The correspondence policy also prohibits "sexually explicit material which by its nature or content poses a threat to the security, good order or discipline of the facility or facilitates criminal activity." *Id.* The term "sexually explicit" means "a pictorial depiction of actual or simulated sex acts including sexual intercourse, oral sex, or masturbation." *Id.* "[W]ritten text in the printed matter does not qualify the printed matter as sexually explicit." *Id.*

According to Andy Dugan, IDOC Director of Policy Development and Accreditation, "IDOC generally prohibits printed materials, including personal photos depicting nudity, because allowing inmates access to materials depicting nudity would create a hostile work environment for female custody and administrative staff." Dkt. 55-3, para. 5. "Female employees working within Indiana Correctional Facilities, [including WVCF], are more often objectified and harassed by the inmate population when inmates are allowed to possess printed materials depicting nudity." *Id.* at para. 6.

### C.  Confiscation of Mr. Trowbridge's Photograph

In November of 2017, and on all dates relevant to this lawsuit, Defendant Jeanne Watkins was employed by IDOC and worked as the Mail Supervisor at WVCF. Dkt. 55-1, para. 1. Her duties included reviewing incoming correspondence for compliance with the correspondence policy. *Id.* at para. 2.

On November 23, 2017, Mr. Trowbridge's fiancée sent him an email with an attached photograph of her inner thighs and pelvis. Dkt. 55-2, p. 13; dkt. 55-4; dkt. 55-5. In the photograph, she is wearing semi-transparent underwear that fails to fully cover her labia. *Id.* The email and attached photograph were originally screened by JPay staff and were not blocked or confiscated at that time. Dkt. 55-2, p. 24. Soon after receiving the email, Mr. Trowbridge requested to print the

photograph at a JPay Kiosk. *Id.* at 13, 18. He received a printed copy of the photograph on November 28, 2017. *Id.*

Before he received the printed photograph, Mr. Trowbridge made a second JPay request on November 28, 2017. *Id.* at 18. When Ms. Watkins reviewed the second request, she determined the photograph violated the correspondence policy because it displayed a portion of the fiancée's labia and denied the request. *Id.*; dkt. 55-1, para. 9. She deleted the email attachment from Mr. Trowbridge's account and issued a confiscation slip notifying him that she had confiscated the photo pursuant to the correspondence policy. *Id.*

Mr. Trowbridge challenged the confiscation of the photograph by filing a grievance, which was denied by the grievance specialist. Dkt. 55-8; dkt. 55-9. He then filed a facility level appeal, which was denied by Warden Richard Brown, Dkt. 55-9, and a department level appeal, which was denied by IDOC Grievance Specialist Linda VanNatta. Dkt. 55-10, pp. 10-12.

**D. Social Science Articles**

Mr. Trowbridge has submitted two scholarly articles in opposition to the motion for summary judgment. *See* dkt. 61, pp. 54-73.

The first article, "Policies on Sexually Explicit Materials in State Prisons," 24(2) *Criminal Justice Policy Review* 222 (2011), examines correctional policies regarding inmate access to sexually explicit materials. *Id.* at 54. Upon reviewing the scientific literature in this area, the authors conclude that "it is not entirely clear whether" findings from the general population, which suggest a positive correlation between use of pornography and aggressive or violent behavior toward women, "translate to prison inmates." *Id.* "Nonetheless, prison administrators may still have a legitimate penological interest in restricting these materials . . . [because] [a]ccess to these materials could encourage inmate sexual behavior, sexual harassment, or sexual violence." *Id.*

at 55. Although the article references one study that found a negative correlation between access to sexually explicit materials and inmate-on-inmate sexual assault, the article also references a different study that found a positive correlation between access to sexually explicit materials and inmate disciplinary violations. *Id.* at 62-63. The authors caution that "research is still mixed and there remains debate as to the link between the consumption of [sexually explicit] materials and subsequent sexual abuse or violence." *Id.* at 64.

The second article, "The Pleasure is Momentary . . . the Expense Damnable? The Influence of Pornography on Rape and Sexual Assault," 14 *Aggression & Violent Behavior* (2009), discusses studies exploring a causal connection between the use of pornography and the commission of sexual assault among the general population. *Id.* at 67. The article proposes that evidence of a causal connection is "slim and may, at certain times, have been exaggerated by politicians, pressure groups, and some social scientists." *Id.*

### III.
### DISCUSSION

As a general rule, prisoners have a constitutionally protected interest in incoming and outgoing correspondence. *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011). Prison officials may, however, impose restrictions on prisoner correspondence if those restrictions are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Thornburgh v. Abbot*, 490 U.S. 401, 413 (1989) (adopting the *Turner* reasonableness standard for regulations on incoming publications sent to prisoners). Such legitimate penological interests include protecting prison staff from unwanted sexual harassment and maintaining safety and security in correctional facilities. *Payton v. Cannon*, 806 F.3d 1109, 1110-11 (2015).

*Turner* establishes four factors that are "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89. First, there must be a "valid, rational connection between the

prison regulation and the legitimate government interest put forward to justify it." *Id.* Second, courts consider whether there are "alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third, courts consider the "impact" that the "accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* On this point, the Court noted that "courts should be particularly deferential to the informed discretion of corrections officials" when the accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or prison staff. *Id.* Fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* At the same time, "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.*

As to the first factor, the defendants have established a rational connection between the correspondence policy and the legitimate penological interests of protecting female employees from unwanted sexual harassment and maintaining safety and security in IDOC facilities. Mr. Dugan stated in a sworn affidavit that female employees at IDOC facilities, including WVCF, experience more unwanted sexual harassment when inmates are allowed to possess printed materials depicting nudity. Dkt. 55-3, paras. 5-6. The Seventh Circuit affirmed summary judgment on similar facts in *Payton*, where the former warden of the plaintiff's facility stated that in his experience, female correctional employees "are more often objectified and harassed by the inmate population when the inmates are allowed to receive nude publications, nude photographs and nude prints." 806 F.3d at 1110.

Mr. Trowbridge's attempt to distinguish *Payton* is unpersuasive. He argues that the submission of scholarly articles in this case provides "countervailing evidence" to Mr. Dugan's statement about the objectification and harassment of female employees. Dkt. 62, p. 6. This

argument fails for two reasons. First, both articles were discussed by the Seventh Circuit in *Payton*. Although the panel lamented that "behavioral issues in American law" are often not "analyzed scientifically," it nonetheless affirmed summary judgment based on existing precedent. 806 F.3d at 1110-11. Second, these articles do not contradict Mr. Dugan's sworn statement. "Policies on Sexually Explicit Materials in State Prisons" concludes that access to sexually explicit materials may increase the prevalence of sexual harassment, sexual violence, inmate sexual behavior in correctional facilities. Dkt. 61, p. 55. The article also references a study that found a correlation between access to sexually explicit images and inmate disciplinary violations. *Id.* at 62-63. Overall, this article does Mr. Trowbridge more harm than good and further establishes a rational connection between the correspondence policy and IDOC's legitimate penological concerns.

As to the second factor, the correspondence policy permits alternative means for Mr. Trowbridge to communicate with individuals outside the facility, including his fiancée. Nothing in the correspondence policy prevents them from sharing the news of their day-to-day lives, their feelings toward one another, or other intimate thoughts commonly expressed between individuals in a romantic partnership. *See* dkt. 61, p. 22 (Pursuant to the correspondence policy, "written text in the printed matter does not qualify the printed matter as sexually explicit.") Mr. Trowbridge may also receive intimate photographs from his fiancée that do not display her exposed breasts or genitalia.

As to the third factor, allowing inmates unfettered access to nude or sexually explicit images may well have a negative impact on prison staff and other correctional resources. According to Mr. Dugan, female employees may be subject to increased sexual harassment from inmates if the correspondence policy were rescinded. An increase in inmate sexual harassment would likely cause a corresponding increase in inmate disciplinary violations and disciplinary

proceedings, such as written reports, hearings, appeals, and the enforcement of sanctions including segregation and the revocation of earned credit time. These "ripple effects" weigh against additional accommodation of Mr. Trowbridge's constitutional right to receive correspondence.

Finally, Mr. Trowbridge has not identified an obvious, easy alternative to prohibiting his access to nude or sexually explicit imagery. The lack of an easy alternative suggests that the correspondence policy is reasonable. To the extent Mr. Trowbridge argues that the policy is not objective, or that the confiscation of his photograph resulted from an arbitrary or capricious action on the part of Ms. Watkins, this argument is unpersuasive. The photograph clearly displays part of the fiancée's genitalia, which is expressly forbidden by the correspondence policy. *See* dkt. 55-4; dkt 55-7, p. 21. The fact that JPay staff initially failed to identify this policy violation does not make Ms. Watkins' decision arbitrary or capricious or suggest that the correspondence policy is selectively enforced according to the personal attitudes of individual IDOC employees.

The photograph confiscated by prison officials in this instance would have likely survived scrutiny if it was slightly less revealing. The exception in the correspondence policy for swimsuit magazines and lingerie catalogues indicates a modest concession by prison officials for the sort of images that are commonly aired on network television and which might "lighten slightly the burden of imprisonment in a maximum-security prison." *See Payton*, 806 F.3d at 1111. These distinctions may appear arbitrary to Mr. Trowbridge. Indeed, correctional agencies in many other states would have allowed him to receive the photograph that was confiscated in this case. *See* dkt. 61, p. 60. Nevertheless, it is not the role of federal courts to alter prison correspondence policies to achieve a perceived perfect balance of institutional concerns. It is enough that the confiscation of Mr. Trowbridge's photograph and the prohibition on nude or sexually explicit

images are reasonably related to legitimate penological concerns. Accordingly, the defendants' motion for summary judgment is **GRANTED**.

## IV.
## CONCLUSION

For the reasons explained above, the motion for summary judgment, dkt. [55], is **GRANTED**. Final judgment in accordance with this Order shall now issue.

**SO ORDERED**.

Date: 10/29/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DUSTIN MICHAEL TROWBRIDGE
973881
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Benjamin C. Ellis
INDIANA ATTORNEY GENERAL
Benjamin.Ellis@atg.in.gov

Zachary Robert Griffin
INDIANA ATTORNEY GENERAL
zachary.griffin@atg.in.gov